### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BRENDA HAUGHT,** | ) | **CASE NO. 4:06CV3225** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **v.** | ) | **AND ORDER** |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| **Michael J. Astrue, Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The Plaintiff, Brenda Haught ("Ms. Haught"), seeks review of a decision by the Defendant Social Security Administration ("SSA") denying Ms. Haught's application for disability insurance benefits filed under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.* Ms. Haught originally filed her application on January 26, 2004. Social Security Transcript ("TR") at 59–61. The application was based on allegations that Ms. Haught has been unable to work since October 7, 2002, due to bipolar disorder and anxiety. TR 69. The SSA, on initial review, denied Ms. Haught's claim on May 20, 2004. TR 30–33. Ms. Haught filed a request for reconsideration, and, after the SSA initiated another review, Ms. Haught's request for reconsideration was denied on July 1, 2004. TR 34–37.

Ms. Haught filed a request for a hearing on August 11, 2004, and that hearing was held on October 27, 2005. TR 40, 14. Subsequent to that hearing, Administrative Law Judge ("ALJ") Ronald D. Lahners made several findings. Those were, among others, the following:

> 3.      The medical evidence establishes that the claimant has the following severe impairments: adjustment disorder with depressed mood, anxiety and personality disorder. However, the evidence does not establish medical findings which meet

or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulation No. 4.

4.  The claimant's subjective complaints are not fully credible to the extent that they are inconsistent with the medical evidence and the findings regarding functional limitations.

. . . .

8.  Based on the claimant's age, education, vocational experience and residual functional capacity, Rules 203.23 and 203.30 of Table No. 3, Appendix 2, Subpart P, Regulation No. 4, as a framework for decisionmaking, justifies a finding that the claimant is "not disabled."

9.  Considering the vocational expert's testimony, the claimant can perform work that exists in significant numbers in the regional and national economies. . . .

10.  The claimant has not been under a "disability," under the Regulations, since her alleged onset date of October 7, 2002.

TR 19.  The ALJ upheld the SSA's decision, finding that Ms. Haught was not entitled to a period of disability or disability insurance benefits.  TR 20.

On August 31, 2006, the Appeals Council denied Ms. Haught's request for review. TR 4.  Ms. Haught now seeks judicial review of her claim. This Court has reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript, and the applicable law.  For the reasons stated below, this Court concludes that the ALJ's findings and conclusions should be affirmed.

**Medical Background**

Ms. Haught was born on December 14, 1955, and was forty-six years old on her alleged onset date of October 7, 2002.  TR 23, 69–70.  She has earned a high school diploma, and has completed a vocational computer-training program at General Electronics.  TR 73.  From July 7, 1981, to October 7, 2002, Ms. Haught worked for

2

Square D, where she used a welding machine, built breakers, packed orders, and made sure the assembly line was running smoothly. However, the company started to reduce staff, and Ms. Haught took a voluntary lay-off on October 7, 2002. TR 70.

Ms. Haught's complaints related to her current claim of disability appear in the record at least as early as May 17, 2002, when she complained to her primary physician, Dr. Richard Jirovec ("Dr. Jirovec"), of "problems with her mood." TR 144. By July 19, 2002, Dr. Jirovec reported that Ms. Haught felt "like she is going to jump out of her skin, she has been very emotional. . . . She has been pretty tearful." TR 141. On August 2, 2002, Dr. Jirovec noted "mood swings rather abruptly having tearful episodes," and he diagnosed Ms. Haught with mood disorder. Dr. Jirovec also noted that Ms. Haught stated she was missing work because of her feelings of anxiety, tension, and stress. TR 140–41. She again saw Dr. Jirovec on August 20, 2002, and he stated that she "reports a lot of stress at work. . . . [C]oworkers make inappropriate comments at work. Between this and her problems with anxiety and mood lability [sic], she's not been able to work and indeed, missed 3 days of work last week." Dr. Jirovec cleared Ms. Haught for four weeks of medical leave. TR 139–40. A followup appointment was scheduled for September 23, 2002, where Dr. Jirovec noted that "[v]ulnerability of her mood swings is what is most concerning." Dr. Jirovec referred her for a psychiatric evaluation. TR 138–39.

Examination records from the Lincoln Psychiatric Group, dated October 7, 2002, indicate that Ms. Haught complained of depression, crying spells, weight gain, exhaustion, and mood swings. She was diagnosed as having atypical bipolar disorder, and was prescribed medication. Follow up notes suggest that the medication was working, that she

3

was feeling better with no crying spells, but that she was tired and sleepy all the time.  TR 239–40.

On April 28, 2004, a clinical psychologist, Dr. William R. Stone, Jr. ("Dr. Stone"), examined Ms. Haught.  Dr. Stone stated that Ms. Haught "may" have dysthymic disorder; opined that there was a likelihood that she has adjustment disorder with depressed mood; and further diagnosed mixed personality disorder.  Dr. Stone stated that, as to her mental status, Ms. Haught's general adaptive functioning ("GAF") is in the 75 to 84 range,[1] and made the following observations:

> 1.   [Ms. Haught] is psychologically capable of performing basic daily living tasks and in maintaining minimally adequate social contacts.
> . . . .
> 3.   Ms. Haught is able to sustain concentration and attention.
> 4.   Ms. Haught is capable of understanding and remembering short and simple instructions, even complex and complicated instructions, and is psychologically capable of carrying out such instructions under ordinary supervision.
> 5.   Ms. Haught is capable of relating appropriately to co-workers and supervisors.
> 6.   Ms. Haught is capable of adapting to ordinary day to day changes in her environment and of managing her own funds.

Dr. Stone also noted that Ms. Haught "states that she would be able to work if she could find a job and is looking for 'whatever kind' of work she can locate."  TR 190–94.

---

[1]"The GAF scale ranges from zero to 100 and '[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.'"  *Davis v. Astrue*, 2007 WL 1574412, at *4 (W.D. Va. May 30, 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994)).  "A GAF of 71–80 indicates that '[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors . . .; no more than slight impairment in social, occupational, or school functioning . . . .'"  *Id.* at *5 (quoting DSM-IV at 32).  "A GAF of 81–90 indicates '[a]bsent or minimal symptoms . . ., good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns . . . .'"  *McKnight v. Astrue*, 2007 WL 1552571, at *4 (W.D. Va. May 30, 2007) (quoting DSM-IV at 32).

Between May 18, 2004, and June 30, 2004, Dr. Linda Schmechel, Ph.D, ("Dr. Schmechel") completed two Psychiatric Review Techniques; she did not personally examine Ms. Haught prior to completing either analysis.  In the May analysis, she stated that Ms. Haught has dysthymic disorder and adjustment disorder with depressed mood. However, Dr. Schmechel noted no degree of limitation in daily living; no degree of limitation in social functioning; no degree of limitation in concentration, persistence, or pace; and no repeated episodes of decompensation.  TR 176–89.  In the June analysis, Dr. Schmechel noted that Ms. Haught did have a medical impairment, but that the impairment was not severe.  Further, Dr. Schmechel again stated that Ms. Haught has dysthymic disorder and adjustment disorder with depressed mood, but suggested that Ms. Haught's impairments cause no limitations to her daily living; no limitations to her social functioning; no limitations to her concentration, persistence, or pace; and she has no repeated episodes of decompensation.  TR 195–208.

Dr. Jirovec continued to treat Ms. Haught for her mental disorder.  On December 9, 2004, Dr. Jirovec completed a mental medical source statement.  Dr. Jirovec found that Ms. Haught was not significantly limited in her ability to: (1) understand, remember, and carry out very short and simple instructions; (2) make simple work-related decisions; and (3) ask simple questions or request assistance.  Further, Dr. Jirovec opined that Ms. Haught was moderately limited in her ability to: (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) sustain an ordinary routine without special supervision; (6) interact appropriately with the general public; and (7) accept instructions and respond appropriately to criticism from supervisors.

5

Finally, Dr. Jirovec stated that Ms. Haught was markedly limited in her ability to: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) work in coordination with or proximity to others without being distracted by them; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods; (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (5) maintain socially appropriate behavior and adhere to basic standards or neatness and cleanliness; (6) respond appropriately to changes in the work setting; and (7) set realistic goals or make plans independently of others.[2]  TR 210–11.

Throughout her treatment, Ms. Haught was prescribed or given samples of many medications, including Wellbutrin, Zoloft, Prozac, Zyprexa, Zocor, Lotrel, Topamax, and Ambien.  TR 141–220.  There appear to be no severe side effects noted in the record, and it is reported by Ms. Haught that some of the medications (specifically Topamax) helped with her symptoms.  TR 192–93.  However, at times Ms. Haught was not able to afford all of the prescribed medications.  TR 220.

## Standard of Review

When reviewing an ALJ decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995).  Rather, the district court

---

[2]I note that, at the administrative hearing, the testifying vocational expert stated that—given a hypothetical claimant with marked limitations consistent with those listed by Dr. Jirovec for Ms. Haught in the medical source statement—the hypothetical claimant would be unable to find employment in the local and national economies.  TR 267.

will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole.  *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir. 1990).  "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).  In determining whether the evidence in the record as a whole is substantial, the district court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

The substantial evidence standard "allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Commissioner may decide to grant or deny benefits without being subject to reversal on appeal." *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir.1991) (citing *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)).  If the district court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).  Rather, if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, then the Commissioner's decision must be affirmed. *See Young*

7

*v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

**Discussion**

Ms. Haught sets out several errors to support her position that the ALJ's opinion should be overturned.  Renumbered and restated, she essentially makes three arguments. First, she argues that the ALJ erred in failing to give the treating physician's opinion controlling weight, and erroneously assigned weight to the non-treating physicians. Second, she argues that the ALJ improperly considered the record, which resulted in an inaccurate RFC determination.  Finally, she argues that the ALJ, contrary to the Social Security regulations, failed to document application of the psychiatric review technique, and suggests that this is an error of law which requires reversal and remand.  All of these suggested errors are discussed below.

### *A. Treating and Non-Treating Physicians*

When reviewing the weight given by an ALJ to a treating physician's opinion, a district court will find error if the ALJ failed to consider or discuss that opinion and the record contains no contradictory medical evidence.  *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).  "The regulations provide that a treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012–13 (8th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)).  A treating physician's opinion is not automatically controlling—it must be assessed against the record as a whole

8

and may be discounted if it is inconsistent with other parts of the same opinion or inconsistent with the record as a whole. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Further, a physician's opinion that an applicant is disabled or unable to work is not the type of medical opinion an ALJ need give controlling weight, as it involves a legal conclusion reserved for the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (internal marks omitted))).

Accordingly, a treating physician's opinions, regardless of specialty, are generally entitled to substantial weight. However, if a specialist's opinion appears in the record, the SSA is encouraged to consider that opinion if the medical issue on which the specialist is rendering an opinion is related to that specialist's expertise. *See Kelley*, 133 F.3d at 589 ("A treating physician's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data. The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." (citations omitted)).

In this case, Ms. Haught argues that the ALJ erred in not granting the opinion of Dr. Jirovec—specifically, the opinions expressed in Dr. Jirovec's medical source statement—controlling weight. The ALJ gave several reasons why he was granting the medical source statement little weight. First, the ALJ noted that Dr. Jirovec is not a

licensed psychologist or psychiatrist.  Second, the ALJ found that the medical source statement is not supported by Dr. Jirovec's progress notes, nor is it supported by other evidence of record.  Finally, the ALJ noted that Ms. Haught's demeanor at the hearing was not consistent with the mental limitations assessed by Dr. Jirovec.

The ALJ cited to a clinical psychologist's opinions, those opinions contained in Dr. Stone's report, to discredit some of the opinions contained in Dr. Jirovec's medical source statement.   Dr. Stone's report suggests that Ms. Haught is capable of maintaining minimally adequate social contacts; able to sustain concentration and attention; capable of understanding and remembering short, simple instructions (and even complex, complicated instructions), and is psychologically capable of carrying out such instructions under ordinary supervision; capable of relating appropriately to co-workers and supervisors; capable of adapting to ordinary day to day changes in her environment; and rated her GAF between 75 and 84.

Similarly, Dr. Jirovec's medical source statement is not supported by the psychiatric review techniques (both of which found Ms. Haught to have no limitations in her daily living; no limitations in her social functioning; no limitations in her concentration, persistence, or pace; and no repeated episodes of decompensation), as well as the progress notes from the Lincoln Psychiatric Group (which indicate that Ms. Haught was feeling better and that her mood was leveling).

Finally, the ALJ noted that Ms. Haught's demeanor at the hearing was not consistent with the mental limitations assessed by Dr. Jirovec.  While an ALJ's observations "cannot be dispositive of [a claimant's] credibility," *Muncy v. Apfel*, 247 F.3d 728, 735 (8th Cir. 2001), "[t]he ALJ's personal observation of the claimant's demeanor during the hearing is

10

completely proper in making credibility determinations," *Johnson v. Apfel*, 240 F.3d 1145, 1147–48 (8th Cir. 2001). The ALJ in this case did not improperly rely solely on his own observations, but rather appropriately used his observations as one factor in determining Ms. Haught's credibility.

Dr. Jirovec's opinions should be granted controlling weight if they are well-supported by laboratory and clinical diagnostic techniques, and are not inconsistent with the record as a whole. However, the Commissioner is granted a zone of choice, and in this case, I cannot say that Dr. Jirovec's opinions are well-supported by laboratory tests and other corroborating evidence such that I can overturn the ALJ's findings.

## B. RFC Determination

In general, the findings of an ALJ must be supported by substantial evidence in the record. In particular, the Eighth Circuit Court of Appeals has characterized an RFC[3] finding as a "medical question," *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002), and therefore "some medical evidence must 'support the determination of the claimant's'" RFC, *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "[T]he ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace," *Lauer*, 245 F.3d at 704, and is accordingly "required to consider at least some supporting evidence from a [medical] professional," *id.* However, an RFC assessment should not necessarily be based *solely* on medical evidence, but rather should be based on all "relevant evidence." 20 C.F.R. §§ 404.1545(a),

---

[3]RFC is defined as what the claimant "can still do despite . . . limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

416.945(a).   This includes observations by treating or examining physicians or psychologists, family, and friends; medical records; and the claimant's own description of her limitations.  *Id.* §§ 404.1545(a)–(c), 416.945(a)–(c); *McKinney v. Apfel,* 228 F.3d 860, 863–64 (8th Cir. 2000).

Consequently, before determining a claimant's RFC, an ALJ must evaluate the claimant's credibility.  The *Polaski* standard is the guide in the Eighth Circuit for credibility determinations.  It provides, in relevant part:

> The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. . . .  The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1.   the claimant's daily activities;
> 2.   the duration, frequency and intensity of the pain;
> 3.   precipitating and aggravating factors;
> 4.   dosage, effectiveness and side effects of medication;
> 5.   functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986); *see* 20 C.F.R. § 404.1529; *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003).[4]   Deference is generally granted

---

[4]Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency

to an ALJ's determination regarding the credibility of a claimant's testimony and, in particular, subjective complaints of pain. *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, although each factor may not have been discussed); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide.").

---

between the statements and the other evidence in the record.  Ruling 96-7p provides that the ALJ must consider such factors as:

> \* The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.

> \* The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e). However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

> \* The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

SSR 96-7p, 1996 WL 374186 (S.S.A.), at \*5 (July 2, 1996).

Ms. Haught argues that although an ALJ is required to regard third-party information and observations, in this case, the ALJ did not acknowledge or consider the existence of the third-party evidence contained in the record.  Further, Ms. Haught argues that the ALJ made an improper determination with regard to her own credibility.  Consequently, she argues that the ALJ could not have based any of his determinations on the substantial evidence of record, which constitutes reversible error.

However, I find that the record demonstrates that the ALJ performed a sufficient *Polaski* analysis and considered the appropriate factors in determining that Ms. Haught's subjective complaints were not fully credible.  Although the ALJ "must give full consideration to all of the evidence presented relating to subjective complaints, including . . . observations by third parties," the third-party report in this case has very little, if any, effect on the overall disposition of Ms. Haught's claim.  When asked to describe Ms. Haught's average daily functioning, the third party was unable to answer the question, as she has had "very little contact" with Ms. Haught.  In fact, several questions were answered with question marks or "I don't know."  TR 75–77.  What little information the third party did provide was substantially duplicative of Ms. Haught's own testimony.  *See* TR 243–63.

Further, the ALJ gave some credibility to Ms. Haught's statements, and found that she has severe impairments that restrict her to a job where she would have limited contact with other parties, including supervisors.  The impairments delineated in the findings are substantial limitations[5] and show some deference to Ms. Haught's own evaluation of her ability to function in the workplace.  However, the ALJ's finding that Ms. Haught was not

_____

[5]The ALJ found that Ms. Haught has adjustment disorder with depressed mood, anxiety and personality disorder.  TR 19.  These are significant findings indicating a severe limitation.

14

completely credible—when viewed in light of the *Polaski* factors—is supported by the record as a whole, and consequently is not error.

### C. Psychiatric Review Technique Analysis

A psychiatric review technique analysis[6] "involves determination of whether there is a mental impairment followed by a rating of the degree of functional limitation resulting from the mental impairment." *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007).  In the Eighth Circuit, it has been found that the analysis "is *required* to be conducted and documented at each level of the review process, including the ALJ level."  *Id.* (emphasis added) (citing 20 C.F.R. § 416.920a (a)–(e)).  While at the early stages of the application process (initial review and reconsideration) this analysis *must* be documented by a standard form, at the ALJ and Appeals Council levels, "it is permissible for the analysis to be included within the written decision such that the use of a written form is not required." *Id.*  However, in the Eighth Circuit, if a discussion of the psychiatric review technique is absent from the ALJ's opinion, the matter will be remanded to the Commissioner for further

---

[6] The general procedure for conducting a psychiatric review technique analysis is as follows:

> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). See § 404.1508 for more information about what is needed to show a medically determinable impairment. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

> (2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

20 C.F.R. § 404.1520a (b)(1)–(2).

consideration.  *See id.*; *see also* Social Security Law and Practice § 55:63 ("Failure of ALJ to analyze disability insurance benefits (DIB) claimant's borderline intellectual functioning under required psychiatric review technique in opinion denying claim, as well as apparent failure to apply technique at other levels of application process, was error.").  In *Nicola*, the court noted that "no psychiatric review technique analysis is included in the ALJ's decision[,] nor is there evidence of the technique being conducted or documented at the other levels of the application process," *Nicola*, 480 F.3d at 887, and remanded the matter to the Commissioner.

In this case, there were two standard form psychiatric review techniques completed at the initial review and reconsideration phases of the application process.  TR 176–89; 195–209.  Both of these forms are noted by the ALJ.  *See* TR 16 ("In reaching a conclusion regarding whether the claimant is disabled, the undersigned has considered the assessments made by the State agency psychologists regarding the claimant's ability to perform basic work activities in accordance with Social Security Ruling 96-6p.  The undersigned finds that these assessments are generally consistent with the overall record and gives them some weight.").  Ms. Haught argues, however, that the ALJ's decision did not satisfy the requirements of 20 C.F.R. § 404.1520a, which states in part that "[t]he decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s) . . . [and] must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a (e)(2).  Paragraph (c) sets out the following functional

16

areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[7]  20 C.F.R. § 404.1520a (c)(3).

However, a deficiency in opinion writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case.  *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).  I find that the ALJ in this case has conducted and documented a sufficient psychiatric review technique analysis, which includes all four functional areas noted in the federal regulations.  Specifically, I note that the ALJ found "[t]hese daily activities are not that limiting"; "she is not as limited socially as she alleged"; "her ability to concentrate is not more than mildly impaired"; and the "treating physician indicated that her mood was stable."  TR 17; *see also* TR 16 ("[T]he claimant has mild restriction of activities of daily living, moderate difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation.  Also, the claimant does not meet the "C" criteria of these listings.").  Consequently, I do not find that this matter should be remanded to the Commissioner for failure to include a psychiatric review technique analysis.

When reviewing an ALJ's opinion not to extend Social Security benefits, a court will affirm the ALJ's opinion if it is supported by substantial evidence on the record.  In this case, it is not possible for me to say that the ALJ's decision falls outside the zone of

---

[7]"When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  20 C.F.R. § 404.1520a (c)(4).

available choice, and I find that substantial evidence supporting the ALJ's decision exists on the record as a whole.  Accordingly,

IT IS ORDERED:

1.      The findings and conclusions of the ALJ are affirmed; and

2.      A separate Judgment will be entered.

DATED this 26th day of June, 2007.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

18